# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

LEE BOWERS,                          )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          Case No. 1:19-cv-00802-TWP-DLP
                                     )
ANTHEM, INC.,                        )
                                     )
                    Defendant.       )

### ENTRY GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

This matter is before the Court on Defendant Anthem, Inc.'s ("Anthem") Renewed Partial Motion to Dismiss Count II of Plaintiff's Amended Complaint for Failure to State a Claim and to Dismiss Claim for Punitive Damages pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing No. 37.) On May 20, 2019, Plaintiff Lee Bowers ("Bowers") filed an Amended Complaint for Damages and Demand for Trial by Jury, alleging Anthem breached both his contract and the implied duty of good faith and fair dealing when failed to pay him severance benefits under the terms of the Key Sales Associate Agreement. (Filing No. 31.) Bowers seeks both compensatory and punitive damages. *Id*. Anthem moves to dismiss Count II of the Amended Complaint, Breach of the Implied Duty of Good Faith and Fair Dealing, and Bowers' claim for punitive damages. For the reasons stated below, Anthem's Partial Motion to Dismiss is **granted**.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of Bowers as the non-movant. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Bowers was hired on May 10, 1999 by UniCare, an Anthem subsidiary, to sell medical insurance and ancillary services to UniCare customers. (Filing No. 31 at 2.) During his last two years of employment with UniCare, he sold only ancillary products. *Id.* From 1999 through 2015, all of Bowers' supervisors gave him favorable reviews and he was considered a top salesperson. *Id.* at 3. In 2012, as UniCare was being phased out, Bowers' superiors at UniCare recommended him for an open position with Anthem Blue Cross Blue Shield of Missouri selling ancillary products. *Id.* Bowers moved to Missouri and began his employment as a Specialty Sales Executive with Anthem Blue Cross Blue Shield of Missouri in July 2012. *Id.*

Specialty products, which are also called ancillary products, are sold by a dedicated Anthem sales force to customers who have already purchased its group medical insurance. *Id.* Specialty products include dental insurance, vision insurance, life insurance, disability insurance, and accidental death and dismemberment insurance. *Id.* Bowers sold these products to Anthem's existing group medical insurance customers in Missouri. *Id.*

For the first two years in Missouri, Bowers did well, receiving an above-average performance rating from his manager Andrew Cassis. *Id.* However, in September of 2014, Stuart Watts ("Watts") became his supervisor and within a few months lowered Bowers' overall rating to "Mixed Results." *Id.* Watts continued to give Bowers "Mixed Results" ratings in 2015. *Id.* Watts was critical of Bowers from the beginning, calling him "old school" and declining to engage with Bowers to help him produce sales. *Id.*

Throughout this period, Bowers continued to perform at an average to above average level when compared to the sales performance of his peers across the country. *Id.* Despite his performance, Watts continued to allege that Bowers was not meeting the goals set for him by

Anthem.  *Id.* at 4.  The goals set for Bowers were unreasonably high and much higher than the goals set for his peers in comparable markets.  *Id.*

Watts placed Bowers on a Performance Improvement Plan ("PIP") in 2015. *Id.* Bowers successfully completed the PIP.  *Id.*  In September 2016, Watts placed Bowers on a second PIP.  *Id.*  At the end of this second PIP, Watts issued a Corrective Action to Bowers in the form of a written warning, effective for 30 days and expiring on January 31, 2017.  ([Filing No. 1-2](#).)  During the 30-day Corrective Action period, Watts was transferred to a different position and replaced by Jole Burghy ("Burghy").  (Filing No. 31 at 4.)  Burghy and other Anthem executives had nothing but good things to say about Bowers during and after the Corrective Action period.  *Id.*

On January 6, 2017, Burghy extended an invitation to Bowers to come to the by-invitation-only Breckinridge broker event and offered him the opportunity to invite a broker.  *Id.*  On January 9, 2017, Bowers was asked to write an article on specialty products as a subject matter expert for Healthlink's Expert Insights series.  *Id.*  On February 6, 2017, Burghy met with Bowers to discuss his plans for the year.  *Id.*  She told him she planned to support him going forward and responded positively to his report of numerous prospects and opportunities in his pipeline including a large school consortium RFP that was pending and Platinum Broker Bonus agreement he was negotiating. *Id.* at 4-5.  Anthem issued an invitation to Bowers to attend the National Sales Conference in mid-March in Las Vegas, Nevada.  *Id.* at 5.  At a meeting on February 15, 2017, Burghy congratulated Bowers in front of all the sales representatives and account managers on the Missouri team for a large sale which he had just finalized.  *Id.* at 6.

Following the expiration of the Corrective Action, neither Burghy nor her boss Vice President Brad Coons ("Coons") or any other Anthem manager indicated in writing, by word or by action that Bowers' performance did not meet the expectation of his position.  *Id.* at 5.  Burghy,

both verbally and by implication from her actions, believed that at the end of the Corrective Action period, Bowers was meeting the performance expectations of his position. *Id.* By all objective measures, Bowers' performance met the expectations of his position. *Id.* For example, the company sales reports provided to him in 2015 and 2016 indicated that his performance on numerous measures placed him in the top 30 to 40 percent of Specialty Sales Executives across the country. *Id.* Despite repeated requests, Anthem managers refused to provide comparable reports for the entire 2016 year to Bowers. *Id.*

On February 24, 2017, Anthem terminated Bowers' employment. *Id.* at 6. At a meeting which had been scheduled as a "Catch-up" meeting, ostensibly for the purpose of discussing the status of deals in his sales pipeline, Coons informed Bowers that the company would be "going in a different direction." *Id.* Coons also told Bowers he would not receive any severance payment or benefits. *Id.*

On February 22, 2019, Bowers initiated this action and attached to the Complaint a "Key Sales Associate Agreement" (the "Agreement") signed by Marc W. Nathan, "Vice President, Total Rewards" at Wellpoint, Inc. ([Filing No. 1-1](#).) Bowers and Anthem entered into the Agreement in July 2012. ([Filing No. 31 at 2](#).) The Agreement distinguishes between termination For Performance, For Cause, or for some other reason. ([Filing No. 1-1 at 1](#).) Termination For Performance "means the Sales Associate has failed to meet the performance expectations of the position after having been warned regarding the unsatisfactory performance by a prior written 30 days." *Id.* at 2. Importantly, the Agreement ensures severance benefits for someone who is fired for a reason other than performance or cause:

> If the Sales Associate's employment is terminated by the Company, other than For Performance or For Cause, Company agrees to provide the following enhanced severance benefit, as described below, in lieu of any severance benefit under the Company's Severance Pay Plan or any other severance pay program or

arrangement, unless the Sales Associate has a prior non-solicitation and/or non-competition agreement with the Company that provides for severance benefits.

*Id.* at 1. The severance benefits outlined in the Agreement include continued payment for a "salary continuation period" determined by a formula detailed in the Agreement, medical, dental, and vision benefits, and outplacement services through a firm selected by the Company in a form and manner determined by the Company. *Id.* at 2-3. Bowers contends that the value of his enhanced severance package would have been 52 weeks of his annual compensation, or $172,000. ([Filing No. 31 at 6-7](#).)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently,

the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. <u>DISCUSSION</u>

Bowers brings two counts in his Amended Complaint: Count I: Breach of Contract under Indiana law, and Count II: Breach of the Implied Duty of Good Faith and Fair Dealing under Indiana Law. (Filing No. 31 at 7.) His prayer for relief asks for both "[a]n award to Mr. Bowers in the amount of unpaid enhanced severance benefits" and "[a]n award to Mr. Bowers for punitive damages for Anthem's malicious and reckless conduct described above…". *Id.* at 8-9. Anthem seeks dismissal of Count II and Bowers' claim for punitive damages, asserting these claims are prohibited by Indiana law.

Under the Agreement, Bowers was an at-will employee of Anthem, meaning Anthem could terminate his employment at any time for any reason or for no reason at all. *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997) ("If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party."). Bowers does not dispute this fact, and thus he is not claiming wrongful termination. Rather, he alleges that because his employment was terminated for some reason other than cause or poor performance, the Agreement entitles him to a severance package.

Bowers' plea for punitive damages is dependent on the viability of his breach of the duty of good faith and fair dealing claim. If that claim is not viable, Bowers cannot recover punitive damages. As stated by the Indiana Supreme Court in *Miller Brewing Co. v. Best Beers of*

*Bloomington, Inc.*, "punitive damages are not allowed in a breach of contract action." 608 N.E.2d 975, 981 (Ind. 1993). In order to recover punitive damages, a plaintiff "must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded." *Id.* at 984. Thus, the Court must first decide whether Bowers has a viable separate claim for breach of the duty of good faith and fair dealing, then, if he does, whether that claim sounds in tort and is of the kind for which Indiana law recognizes that punitive damages may be awarded. If so, his plea for punitive damages will survive Anthem's Motion to Dismiss.

A.    __Count II: Breach of Implied Duty of Good Faith and Fair Dealing Claim__

In Count II, Bowers alleges that "Anthem had an implied duty to deal in good faith and fairly" with him but "Anthem breached its duty … when it refused to pay his due and owing enhanced severance benefit under the plain terms of the Agreement." (Filing No. 31 at 7.) As noted earlier, the parties agree that Bowers was an at-will employee of Anthem, meaning Anthem could terminate his employment at any time for any reason. Anthem moves to dismiss Count II arguing that Bowers' status as an at-will employee means any implied duty of good faith and fair dealing does not apply to him and secondly, Indiana courts do not recognize a separate and independent cause of action for the breach of a duty of good faith and fair dealing and, alternatively. (Filing No. 38 at 5.)

In support of the first argument Anthem cites *Hamblen v. Danners, Inc.*, a case in which the Indiana Court of Appeals affirmed summary judgment in favor of an employer who had fired an employee despite the existence of an employment contract governing compensation. 478 N.E.2d 926 (Ind. Ct. App. 1985). In *Hamblen*, the Court of Appeals held that "Indiana does not recognize that a duty of good faith is owed by an employer to an employee at will." *Id.* at 929

(citing *Perry v. Hartz Mountain Corp.*, 537 F. Supp. 1387 (S.D. Ind. 1982); *Campbell v. Eli Lilly & Co.*, 413 N.E.2d 1054 (Ind. Ct. App. 1980)).

Indiana cases since 1985 have questioned whether that statement of law is as hard-and-fast as Anthem would have the Court believe. Although Bowers does not challenge his categorization as an employee at-will, he likens himself to Hamblen and other employees who have a contract with their employers that either does not specify a term of employment or expressly recognizes an employee at-will relationship. (Filing No. 40 at 5-6.) One such case is *Weiser v. Godby Bros.*, in which a plurality of the Indiana Court of Appeals departed from *Hamblen's* holding because a "compensation contract" between the employer and employee "formalized the employment relationship … beyond the normal employment at will situation." 659 N.E.2d 237, 239 (Ind. Ct. App. 1995) (Sullivan, J., plurality opinion) (citing *Prudential Ins. Co. of Am. v. Crouch*, 606 F. Supp. 464 (S.D. Ind. 1985), *aff'd* 796 F.2d 477 (7th Cir. 1986)), *trans. denied*. The *Weiser* court reversed the trial court's grant of summary judgment in favor of the defendant employer, determining that questions of fact remained as to whether the employer breached its duty of good faith and fair dealing by exerting undue influence on its employee during contract negotiations. *Id.* at 240.

The Indiana Court of Appeals has since extended *Weiser's* holding beyond cases in which there is an allegation of undue influence, fraud, misrepresentation, unjust enrichment, or some other obvious reason a party could escape its contractual obligations under Indiana law. In *Coates v. Heat Wagons, Inc.*, the Indiana Court of Appeals, in affirming in part a trial court's grant of a preliminary injunction, held that the trial court reasonably concluded that the employee breached an implied covenant of good faith and fair dealing when he engaged in self-serving financial practices. 942 N.E.2d 905 (Ind. Ct. App. 2011). Like Bowers, Hamblen, and Weiser, Coates had

a contract with his employer that did not specify a term of employment. The court noted that Coates "did not have a strictly traditional at-will employment contract with MPI, in that he was afforded certain financial protections in the event of discharge from employment without cause." *Id.* at 919. Nevertheless, it concluded the at-will relationship "does not muddy the waters as to relieve Coates of the duties imposed upon employees in at-will contracts or employment contracts in general." *Id.*

The same is true of Anthem. Indiana Courts have made clear that an at-will relationship, on its own, will not relieve a party of its duty to act in good faith and deal fairly with another party to a contract. Here, Bowers and Anthem agreed that either could leave the employer-employee relationship at any time, but in the event that Anthem severed the relationship for some reason other than cause or performance, it owed Bowers a severance package. In exchange for this promise, Bowers agreed not to engage in behaviors that would be harmful to Anthem, such as poaching its customers or releasing its confidential information to the public. (Filing No. 1-1.) The fact that Bowers was an at-will employee of Anthem does not relieve Anthem of its duty to act in good faith and deal fairly under the contract that both parties signed.

Anthem makes a second argument as to why Bowers' breach of the duty of good faith and fair dealing claim should be dismissed. It argues that "Indiana courts do not recognize a separate and independent cause of action for the breach of duty of good faith and fair dealing." (Filing No. 38 at 5.) Indiana does not recognize an implied duty of good faith and fair dealing for every contract; instead, the state courts have recognized an implied covenant of good faith in the context of employment contracts, insurance contracts, and certain other limited circumstances—for example, when one counterparty stands in a fiduciary, superior, or special relationship to the other. *Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 856 (7th Cir. 2017) (citing *Old Nat'l Bank*

*v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015); *Paul v. Home Bank SB*, 953 N.E.2d 497, 504-05 (Ind. Ct. App. 2011); *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008)). The contract at issue here is not an "employment contract," which under Indiana law must contain the following four terms: (1) the place of employment, (2) the period of employment, (3) the nature of the services the employee is to render, and (4) the compensation the employee is to receive. *Firestone v. Std. Mgmt. Corp.*, 2005 WL 1606955 at *4 (S.D. Ind. 2005) (citing *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. App. 1987)). "A party violates the implied duty of good faith and fair dealing when, though not breaching the *express* terms of the contract, he nonetheless behaves unreasonably or unfairly." *Id.* (citation omitted).

Anthem cites *Amaya v. Brater*, 981 N.E.2d 1235, 1239 (Ind. Ct. App. 2013) ("we are unaware of[] any authority for the proposition that a separate cause of action for breach of good faith exists here, we conclude that counts IV and V of Amaya's complaint are duplicative and raise only one claim for breach of contract against IUSM.") and *Ray Skillman Oldsmobile & GMC Truck, Inc. v. Gen. Motors Corp.*, 2006 WL 694561 at *6 (S.D. Ind. 2006) ("Neither Indiana nor Michigan recognizes an independent tort action for breach of an implied contractual covenant of good faith.") (citing *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 123-24 (Ind. Ct. App. 1992) *et al.*).

Bowers responds that the two claims are distinct because "[l]iability for breach of contract is strict; it does not require any showing of a culpable mental state," whereas "liability for breach of the implied covenant of good faith and fair dealing is not strict; as its name implies, it requires a showing of a culpable mental state—one party's refusal to recognize the other party's rights while knowing it has no rational or principled basis for doing so." (Filing No. 40 at 4.) Bowers argues his implied covenant claim does not arise out of Anthem's refusal to pay the severance, but

out of the "conscious wrongdoing" Anthem engaged in when it "fabricated the claim that it fired him 'for performance.'" *Id.* In support, he cites *Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508 (Ind. Ct. App. 2014). Affirming summary judgment denying a breach of the duty of good faith and fair dealing claim, the *Kopetsky* court cited the following passage from an Indiana Supreme Court decision:

> Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993); *Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173, 181 (1976). In recognizing a cause of action in tort for a breach of that duty, we have also noted that a cause of action will not arise every time an insurance claim is denied. *Hickman*, 622 N.E.2d at 520. For example, a good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Id.* On the other hand, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Id.* To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had the knowledge that there was no legitimate basis for denying liability. *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992).

*Friedline v. Shelby Ins. Co.*, 774, N.E.2d 37, 40 (Ind. 2002).

Bowers casts Anthem in the role of the insurance company in *Kopetsky*. But Bowers has not identified any cases in which an Indiana court acknowledged this separate tort for breach of the duty of good faith and fair dealing outside the context of an insured attempting to recover from an insurer. Without a case indicating otherwise, this Court is persuaded that Indiana courts have carved out this independent tort in the context of insurance contracts only. That is because the rationale for this independent tort, as explained by Indiana courts, particularly focuses on attributes specific to insurance contracts.

"Whether breach of this duty constitutes a tort involves a judicial balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Erie Ins.*, 622 N.E.2d at 518 (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)). The *Erie* court explained that "the existence of a contract, standing

alone, does not give rise to the required 'special relationship' to support imposition of a tort duty. Rather, it is *the unique character of an insurance contract* which supports the conclusion that there is a 'special relationship.'" *Id.* (emphasis added). The contractual relationship between insurer and insured is sometimes adversarial, but at other times fiduciary. *Id.* It is easy to foresee the harm that will result when an insured with a valid claim is denied insurance proceeds in bad faith. *Id.* It is thus the *sui generis* nature of insurance contracts that necessitates this tort to ensure fair play between insurer and insured. *Id.* at 519.

No similar special relationship exists between an employer and employee. Bowers has not identified any public policy benefit that would be served by recognizing this independent tort in the context of a contract between employer and employee. Without the benefit any Indiana cases that have considered applying this independent tort outside the context of an insurance contract, the Court concludes, as the Indiana Court of Appeals did in *Amaya*, that no separate and independent cause of action for breach of good faith exists here, and thus Bowers' breach of good faith claim is duplicative of his breach of contract claim.

Because Indiana does not recognize an independent cause of action for breach of the duty of good faith and fair dealing sounding in tort in the context of an employment relationship, Bowers' breach of good faith claim is duplicative of his breach of contract claim. Anthem's Motion to Dismiss is **granted** as to Bowers' claim for breach of the duty of good faith and fair dealing, and that claim is **dismissed**.

**B.        Punitive Damages**

Bowers contends that Anthem refused to recognize his contractual right to severance benefits even though it knew it had no rational or principled basis for denying those benefits— giving rise to his good faith claim and his plea for punitive damages. However, the Indiana

Supreme Court has determined, "punitive damages are not allowed in a breach of contract action." *Miller Brewing Co.* at 981. Having dismissed Bowers' claim for breach of the duty of good faith and fair dealing, only his breach of contract claim remains. Thus, Anthem's Motion to dismiss Bowers' plea for punitive damages is **granted**.

## IV.    CONCLUSION

For the reasons explained above, Anthem's Renewed Partial Motion to Dismiss Count II of Plaintiff's Amended Complaint for Failure to State a Claim and to Dismiss Claim for Punitive Damages (Filing No. 37) is **GRANTED**. Bowers' claim for breach of the duty of good faith and fair dealing and his plea for punitive damages are **dismissed**. His breach of contract claim remains pending for trial.

**SO ORDERED.**

Date:  11/13/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Chad Harrison Holler
BETZ & BLEVINS
choller@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Claire Bruner-Wiltse
SEDEY HARPER WESTHOFF PC
cbruner-wiltse@sedeyharper.com

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Mary Anne Sedey
SEDEY HARPER WESTHOFF PC
msedey@sedeyharper.com

Erin D. Foley
SEYFARTH SHAW LLP
edfoley@seyfarth.com

Hoorya R. Ahmad
SEYFARTH SHAW LLP (Chicago)
hahmad@seyfarth.com

Robyn E. Marsh
SEYFARTH SHAW LLP
rmarsh@seyfarth.com